**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JASMINE M. WINSTON | CIVIL ACTION NO. 08-111 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment.  [Record Document 17].
Defendants, Former Chief of Police Mike Vansant and Shreveport Police Officer W.J.
Willis, assert that Officer Willis is entitled to qualified immunity for Plaintiff's Section 1983
claims of false arrest and excessive force, and that there is no evidence to support a
Section 1983 claim of supervisory liability against Chief Vansant.   For the reasons
discussed herein, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's
remaining claims are **DISMISSED WITH PREJUDICE.**

## FACTUAL BACKGROUND

Shortly after midnight on January 27, 2007, Shreveport Police Officers, including
officers D.R. Sawyer ("Cpl. Sawyer") and W.J. Willis ("Officer Willis), were dispatched to
the 400 block of Commerce Street in downtown Shreveport to assist with crowd control at
a local night club known as Club Ice.[1]  Upon their arrival, approximately 1500 people were
located inside the club, with an additional 500 people gathered outside the entrance.  A

---

[1]Due to the large number of people gathering outside the club and the "riot-type"
situation that was beginning to occur, a request was made for all available officers to
respond to the scene.  Approximately thirty officers from all four areas of the city
responded to the scene, including undercover officers and off-duty officers that were
working part-time jobs.  [Willis Deposition, pp. 15-17].

Shreveport Fire Department investigator, who had also been summonsed to the scene, determined that the occupancy of Club Ice was in excess of capacity, and the officers were instructed to prohibit anyone from the large crowd gathered outside from entering the building.  [Record Document 17, SOF ¶¶ 1-2].  The officers then began giving commands for the crowd to disperse and to leave the area.  These commands were given for approximately thirty minutes, using the patrol car PA systems and verbal commands, and at times using physical force to push people away from the door.  [Record Document 21, Exhibit 1, p. 4 (Willis' criminal trial testimony)].

After the officers had been on the scene for approximately thirty minutes, Plaintiff Jasmine M. Winston ("Winston"), who had previously been at a club next door drinking alcoholic beverages, attempted to enter Club Ice through a side entrance with a group of friends.  Winston's attempt to gain entrance into the club was blocked by Shreveport Police officers.  Officer Willis saw Winston trying to get around an unidentified officer at the door and saw the officer push Winston away from the door while ordering her to  back away from the door and leave the area.  Officer Willis stepped between Winston and the police officer and began ordering Winston to leave the area.  While doing this, Officer Willis used the short handle of his PR-24 baton to push Winston down the sidewalk.   [Willis Deposition, pp.45-46; Record Document 21, Exhibit 1, p.5 and Exhibit 4 (Willis' narrative report)].

According to Officer Willis and Cpl. Sawyer, Winston then struck Officer Willis twice, once in the jaw and once on top of the head.[2]  [Record Document 21, Exhibit 1, p.5 and

---

[2]Winston denies punching Officer Willis.  She claims she lost her balance and was flailing her arms to keep from falling, but admits this action could have been

Exhibit 4; Willis Deposition, p. 67; Sawyer Affidavit, ¶ 4].  Officer Sawyer proceeded to intervene and forced Winston to the ground, where she struck her face on the sidewalk and suffered injuries to her lips and teeth.  [Sawyer Affidavit, ¶ 4; Record Document 17, SOF ¶ 8].  Winston was arrested and removed from the scene.  She was charged with refusal to disperse, resisting arrest, and battery on a police officer, all misdemeanors.  [Record Document 17, SOF ¶ 9].

On January 25, 2008, Winston filed suit against the City of Shreveport, Shreveport, Police Department, Former Interim Chief of Police Mike Vansant, Corporal D.R. Sawyer, and Officer W.J. Willis (collectively referred to as "Defendants").  In her Complaint, Winston asserted false arrest and excessive use of force claims against Cpl. Sawyer and Officer Willis, Monell claims against the City of Shreveport, the Shreveport Police Department, and Chief Vansant for unlawful policies and practices which allegedly caused or contributed to her injuries, and pendant state law claims based on direct and vicarious liability.  [Record Document 1 (Complaint)].

On August 14, 2009, Defendants filed a Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment.  [Record Document 17].  In the motion, Defendants asserted that Cpl. Sawyer and Officer Willis are entitled to qualified immunity on the claims of false arrest and excessive use of force and that there is no evidence to support a Monell claim.  See id.  Subsequently, Cpl. Sawyer and the City of Shreveport made an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.[3]  The plaintiff

─────────────────

construed as attempting to strike an officer.  [Winston Deposition, p.138].

    [3]Rule 68 of the Federal Rules of Civil Procedures provides, in pertinent part:

accepted the Rule 68 Offer of Judgment [Record Document 26] and an Order of Partial Judgment was entered against the City of Shreveport and Cpl. Sawyer. [Record Document 29].  Plaintiff's federal law claims against Officer Willis for false arrest and excessive use of force, against former interim Chief of Police Mike Vansant for supervisory liability, and pendent state law claims against Officer Willis and former interim Chief of Police Mike Vansant remain.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact,

_____

> (a) Making an Offer; Judgment on an Accepted Offer.  More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.  If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.

the motion must be denied, regardless of the nonmovant's response.  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  <u>Wallace v. Texas Tech. Univ.</u>, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, <u>Little</u>, 37 F.3d at 1075, <u>Wallace</u>, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  <u>Cooper Tire & Rubber Co. v. Farese</u>, 423 F.3d 446, 456 (5th Cir. 2005).

## II.    Federal Law Claims against Officer Willis

Officer Willis has asserted qualified immunity to the claims against him.  Qualified immunity protects government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability,... it is effectively lost if a case is erroneously permitted to go to trial."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).  Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation.  <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam).

A Court ruling upon the issue of qualified immunity must apply a two-step analysis.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).  First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."  <u>Id.</u>  Second, if a violation has been established, the court must then determine whether the

officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.[4]  Id.; Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007).  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  Under this standard, "even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."  Id.; see also, Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (the qualified immunity standard is meant to protect "all but the plainly incompetent or those who knowingly violate the law").

> ### 1.    False Arrest Claims

To prevail on a constitutional claim of "false arrest," a plaintiff must show that he was arrested without probable cause.  Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).  The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).  Qualified immunity shields an officer from liability "even if he 'reasonably but

---

[4]In Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), the Supreme Court held that while the sequence set forth in Saucier is often appropriate, it is no longer mandatory.  Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id.

mistakenly concludes that probable cause is present.'" Evett, 330 F.3d at 688, quoting

Mangieri, 29 F.3d at 1016.

In this matter, to determine whether the deputies are entitled to qualified immunity,

the Court must decide whether officers of reasonable competence could disagree as to

whether probable cause existed as to any of the three charged offenses.  See Wells v.

Bonner, 45 F.3d 90, 95 (5th Cir. 1995) ("If there [is] probable cause for any of the charges

made. . .then the *arrest* was supported by probable cause, and the claim for false arrest

fails.") (italics in original).

### a.    Failure to Disperse

Winston was initially arrested for "failure to disperse," in violation of Louisiana

Revised Statute 14:329.3, which provides:

> Any law enforcement or peace officer or public official
> responsible for keeping the peace may issue a command to
> disperse under the authority of R.S. 14:329.1-14:329.8 if he
> reasonably believes that riot is occurring or about to occur.
> The command to disperse shall be given in a manner
> reasonably calculated to be communicated to the assemblage.

> Whoever willfully fails to comply with a lawful command to
> disperse shall be punished in accordance with the provisions
> of R.S. 14:329.7.

A "riot" is defined as:

> [A] public disturbance involving an assemblage of three or
> more persons acting together or in concert which by
> tumultuous and violent conduct, or the imminent threat of
> tumultuous and violent conduct, results in injury or damage to
> persons or property or creates a clear and present danger of
> injury or damage to persons or property.

La. R.S. § 14:329.1.

In her Opposition to Defendants' Motion for Summary Judgment, Winston asserts no police officer could have reasonably believed that a riot was occurring or about to occur at the time of the incident involving Officer Willis and Winston, thus no officer could have reasonably believed there was probable cause to give a lawful command to disperse or to arrest Winston for her failure to comply with such command.  See Record Document 21. Winston admits there were approximately 500 people outside the club at the time the police officers arrives, but contends the situation had "de-escalated" and there was no longer a potential threat of a riot because 300 to 350 members of the crowd had dispersed at the time of the incident.  The Court disagrees.

When the Shreveport Police officers received the request for officers to respond to the scene at Club Ice, the officers were informed that there was a "riot-type situation." [Willis Deposition, p. 15].  Officer Willis stated that, upon his arrival, there were several different disturbances which the officers were trying to prevent from escalating and that they were trying to prevent other disturbances from occurring.  Id. at p.18.  At the time Winston attempted to gain access to Club Ice through the side entrance, there remained 150 to 200 people outside the club, some of whom continued to be hostile and disruptive. Id. at p.23-24.  In fact, Officer Willis testified that he felt the need to carry his PR-24 baton with him throughout the entire incident at Club Ice:

> A.    As soon as I stepped out of the car I had my PR-24 in my hand and kept it with me throughout this whole incident.
>
> Q.    Any why is that?
>
> A.    Basically it was a tool that I felt was needed to be with me during this incident.

Q.      And it may be obvious to you or it may not be obvious
        to you, but what about this situation made you believe
        that you should carry it?  Can you be specific?

A.      Basically I saw the situation as a riot-type situation due
        to the large crowd, the continuing disturbances, the way
        the initial call came out where officers were yelling for
        help to get there now. . . .  And then also just the failure
        for the crowd to disperse.  Basically we were very
        outnumbered and overwhelmed when officers
        responded there, and that was just another tool I felt
        was needed.

        * * *

Q.      Did there ever come a time when you felt that you could
        put away your PR-24?

A.      No, sir.

        * * *

A.      . . . I could have put away the PR-24 anytime, but I felt,
        I still felt the need for — to have it with me, one, instead
        of, you know, going back to my car and putting it up, I
        had it with me in case anything did escalate past that
        point.  We were still dealing with the same danger of
        them shutting down the club and being, you know, 1500
        people outside the club that were — could come out
        anytime.  So I still felt the need to have it.

Id. at 30-32.

Considering the totality of the circumstances—the initial request for all officers to
respond to Club Ice due to a potential "riot-type" situation, the 500 people or more gathered
outside Club Ice when the officers arrived, the 1500 people located inside the club, the
failure of many members of the crowd to disperse, the hostility of the crowd, the number
of disturbances and the potential for other disturbances to occur—the Court believes that
the police officers had probable cause to issue a lawful command to disperse throughout

the entire incident at Club Ice, including the time of the incident between Officer Willis and Winston.  See e.g., City of Chicago v. Morales, 527 U.S. 41, 108-10, 119 S.Ct. 1849, 1884-85 (1999) (Thomas, J. dissent) (recognizing that because the authority to issue dispersal orders plays a commonplace and crucial role in police operations, the police inevitably must exercise discretion—the law cannot "rigidly constrain their every action"). Hence, when Winston refused to comply with the officer's commands to disperse and leave the area,[5] Officer Willis had probable cause to arrest her for "failure to disperse" in violation of La. R.S. § 14:349.3.[6]  Thus, Winston has failed to establish a genuine issue of material fact that Officer Willis lacked probable cause to arrest her for "failure to disperse."  Accordingly, Officer Willis is entitled to qualified immunity on Winston's claim of false arrest.[7]

---

[5]In her deposition, Plaintiff admitted she heard the officers ordering everyone to leave but that she continued to stand there:

> Q.   And you recall now officers yelling, everybody's got to go, everybody get out, back up, but you just stood there?
> A.   Right.
> Q.   Is that right?
> A.   Right.

[Winston Deposition, p.130].

[6]Winston claims that dash camera videos establish that the officers were allowing foot traffic around Club Ice immediately prior to her confrontation with Officer Willis, and that the officers were not attempting to disperse a crowd to avoid a riot. [Record Document 21].  However, Winston's reliance on these videos are misplaced as none of the officers' vehicles were positioned in a manner in which the camera could visually record the entrance to Club Ice or the incident between Officer Willis and Winston.  See Record Document 21, Exhibits 2 and 3 (compact discs containing dash camera video).

[7]Because the Court finds probable cause existed to arrest Winston for failure to disperse, the offense for which she was initially arrested, it is unnecessary to determine whether probable cause also existed for the charges of resisting arrest and battery of a police officer.  See Wells, 45 F.3d at 95 (a claim for false arrest does not cast its focus

## 2.    Excessive Use of Force Claims

Winston alleges that Officer Willis used excessive force when ordering her to leave

Club Ice.   In analyzing an excessive force claim under the Fourth Amendment, the

Supreme Court has noted:

> Not every push or shove, even if it may later seem unnecessary in the peace
> of a judge's chambers . . . violates the Fourth Amendment.  The calculus of
> reasonableness must embody allowance for the fact that police officers are
> often forced to make split-second judgments—in circumstances that are
> tense, uncertain, and rapidly evolving—about the amount of force that is
> necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396-397, 109 S.Ct. 1865, 1872 (1989).  To succeed on

her claim of excessive force, Winston bears the burden of demonstrating "(1) an injury,

which (2) resulted directly and only from the use of force that was clearly excessive to the

need; and the excessiveness of which was (3) objectively unreasonable."   Ikerd v. Blair,

101 F.3d 430, 433-34 (5th Cir. 1996), citing Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir.

1993).

Officer Willis contends Winston's claim of excessive use of force fails because she

experienced no more than a "de minimis injury."  See Hudson v. McMillian, 503 U.S. 1, 9-

10, 112 S.Ct. 995, 1000-01, 117 L.Ed.2d 156 (1992) (wherein the Supreme Court

recognized that "de minimis uses of physical forces" are insufficient to establish a

constitutional violation).  The amount of injury required to prevail on an excessive force

---

on the validity of each individual charge; instead, the focus is on the validity of the
arrest) (emphasis added).  However, the Court notes that Winston conceded in her
deposition that her actions in "flailing her arms" could have been construed as an
attempt to strike Officer Willis and/or "lashing out at him."  [Winston Deposition, p.138].
Thus, based on the plaintiff's own admissions, an officer could have reasonably
believed she was resisting arrest and/or committing a battery on a police officer.

claim depends on the context in which the injury occurs.  Ikerd, 101 F.3d at 434.  While a showing of a significant injury is not required, the Fifth Circuit does require a plaintiff alleging an excessive force claim to have "suffered at least some injury."  Id., quoting Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993).  However, the Supreme Court has stated that "the extent of injury suffered by a [plaintiff] is one factor that may suggest whether the use of force" was excessive "in a particular situation."  Hudson, 503 U.S. at 7, 112 S.Ct. at 999.  Thus, in gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force.  Ikerd, 101 F.3d at 434.

In her deposition, Winston testified that she suffered no physical injuries as a result of Officer Willis's actions:

> Q.   Now, with respect to Officer Willis, in addition to pushing you back, did he do anything to cause you injury?... You've indicated that he pushed you back; correct?
>
> A.   Correct.
>
> Q.   He didn't hit you?
>
> A.   I don't know.
>
> Q.   In addition to pushing you, can you remember him doing anything else physically?
>
> A.   No.

[Winston Deposition, p.139].

In her Opposition to Defendants' Motion for Summary Judgment, however, Winston points to medical records indicating she suffered bruising to her left hip and forearm, "which could have been caused by Officer Willis' battery of her with his PR-24."  [Record

Document 21, p.20].  Nevertheless, even if the Court were to assume *arguendo* that the contusions suffered by Winston on her left hip and forearm were caused by Officer Willis and his use of the PR-24 baton, her contusions are insufficient to satisfy the injury element of a Section 1983 claim for excessive force under the Fourth Amendment.  See e.g., Glenn v. City of Taylor, 242 F.3d 307, 314 (5th Cir. 2001) (holding that plaintiff could not demonstrate that she had suffered an "injury" where the plaintiff merely experienced swollen wrists after the arresting officer placed handcuffs on her too tightly); Houston-Hines v. Houston Indep. Sch. Dist., No. 04-3539,  2006 WL 870459, *5 (S.D.Tex. April 5, 2006) (finding that scratches, bruises, and soreness for about one week after the incident are nothing more than de minimis injuries and are not enough to raise a genuine issue of material fact to support the first element of an excessive force claim).  Furthermore, there is no allegation that Officer Willis acted with "malice."  See Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999) (wherein the Fifth Circuit held that because "dizziness, loss of breath, and coughing are not significant injuries," they qualify as a cognizable injury only when there is evidence that the victim was "maliciously assaulted" by a police officer).  Accordingly, the Court finds that Winston failed to raise a genuine fact issue that the amount of force used by Officer Willis was "excessive," and that Officer Willis is entitled to qualified immunity on Winston's claim of excessive use of force.  See Glenn, 242 F.3d at 314; Houston-Hines, 2006 WL 870459, *5.

III.    **Federal Law Claims Against the Shreveport Police Department and Former Interim Chief of Police Mike Vansant**

Winston named the Former Interim Chief of Police Mike Vansant ("Chief Vansant") as a defendant asserting liability under 42 U.S.C. § 1983. Specifically, Winston alleges Chief Vansant "established customs, policies, and practices which directly and proximately caused the deprivation of the civil, constitutional, and statutory rights of Winston," and the damages and injuries from which she suffered. [Record Document 1, ¶ 32]. These policies, customs and practices include "inadequate, unreasonable, and improper policies and procedures" related to "the use of force" and/or "hiring, training, supervising, and disciplining of officers relative to the use of force." Id. at ¶ 33.

Supervisory officials, such as Vansant, may not be held liable under Section 1983 for the actions of subordinates on any vicarious liability or respondeat superior theories. Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Instead, Winston must show that: (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. Id. (internal citations omitted). With respect to the third prong, the Fifth Circuit has stated:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.

Id. at 381-82 (internal quotations and citations omitted).

In the instant matter, the Court finds the record is completely devoid of any evidence that Chief Vansant failed to train, supervise, or discipline Officer Willis or that any such failure amounted to deliberate indifference.   Accordingly, Winston's supervisory liability claim against Chief Vansant under Section 1983 fails as a matter of law.

## IV.    State Law Claims

Winston also asserts state law tort claims arising from her allegation that she was arrested without probable cause and that Officer Willis used excessive force during the January 27, 2007 incident.  See Record Document 1, ¶¶ 36-39.  Under Louisiana law, the same standards are used in analyzing state law claims of false arrest and excessive force as constitutional claims, namely, whether the officers actions were "reasonable" under the circumstances.  See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); Reneau v. City of New Orleans, 2004 WL 1497711, *3-4 (E.D.La. July 2, 2004), citing Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977).  The Court has granted Willis qualified immunity, finding probable cause existed for Winston's arrest and that Winston suffered merely de minimis injuries from Officer Willis's use of force.  See infra.  As the Court has found that Officer Willis acted reasonably under the circumstances, Winston's state law claims for direct and vicarious liability must fail also fail.

## CONCLUSION

After careful consideration of the briefs and exhibits filed, and finding that no genuine issues of material fact remain, the Court holds that Officer Willis is entitled to qualified immunity and that Winston's claim of supervisory liability against Chief Vansant

fails as a matter of law.   Moreover, as the Court has ruled that Officer Willis acted reasonably under the circumstances, Winston's state law claims also fail.

Accordingly, the Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment [Record Document 17] filed by defendants is **GRANTED**.  All of Plaintiff Jasmine M. Winston's claims against the remaining defendants are **DISMISSED WITH PREJUDICE**.   A judgment consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of October, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE